UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

　　　　v.　　　　　　　　　　　　　　　　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　12-CR-103S (8)
TARIQ BROWN,

　　　　　　　　　Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Tariq Brown's pro se Motion for Compassionate Release, which the government opposes.[1]  See 18 U.S.C. § 3582 (c)(1)(A).  For the reasons below, Brown's motion is denied.

## II. BACKGROUND

On August 3, 2016, Brown pleaded guilty to Count 2 of the Fourth Superseding Indictment, which charged him and others with engaging in a RICO conspiracy, in violation of 18 U.S.C. § 1962 (d).  See Docket Nos. 594, 597.  Four months later, this Court accepted the parties' sentencing agreement and sentenced Brown to 264 months' (22 years) imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees, or costs.  See Docket Nos. 727, 739; Fed. R. Crim. P. 11 (c)(1)(C).  Brown did not file a direct appeal, and this Court later denied his Motion to Vacate, Set Aside, or Correct his Sentence.  See Brown v. United States, 17-CV-1278S, 12-CR-103S (8), 2020

---

[1] Brown also requests appointment of counsel. (Motion for Compassionate Release, Docket No. 1316, p. 9.)  There is, however, no right to counsel for collateral attacks on a conviction or sentence, such as a motion for compassionate release.  See Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987).  Moreover, Brown has failed to demonstrate that the interests of justice require the appointment of counsel, for example, that he has a reasonable likelihood of succeeding on the merits.  See Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1985).  Brown's request for counsel is therefore denied.

1

WL 888102 (W.D.N.Y Feb. 24, 2020), appeal dismissed by, 20-1709, 2020 WL 7017848 (2d Cir. Nov. 20, 2020). Brown is presently serving his sentence at FCI Berlin, with an anticipated release date of September 17, 2031.[2]

On April 21, 2023, Brown moved for compassionate release (sentence reduction) under 18 U.S.C. § 3582 (c)(1)(A)(i). See Docket Nos. 1316, 1328. Brown argues that his age at the time he committed his offense, his troubled upbringing, his pandemic-related harsh conditions of confinement, and his rehabilitation, considered singly or in combination, constitute extraordinary reasons warranting relief. The government opposes the motion. See Docket Nos. 1323, 1325.

### III. DISCUSSION

**A.   Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions

---

[2] See https://www.bop.gov/inmateloc/ (last visited July 28, 2023).

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, 611 F. Supp. 3d 1, 2 n.1 (S.D.N.Y. 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

> that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is warranted after consideration of the applicable 18 U.S.C. § 3553 (a) factors and consistent with any applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020); United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is not jurisdictional, but rather, is a claim-processing rule that may be waived or forfeited by the government. See United States v. Saladino, 7 F. 4th 120, 121-124 (2d Cir. 2021) (per curiam). If invoked, however, the exhaustion requirement must be enforced because it is a mandatory claim-processing rule. See id. at 125 (Menashi, J., concurring); see also United States v. Schultz, 454 F. Supp. 3d 217, 223-24 (W.D.N.Y. 2020). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [4] or (2) 30 days lapse from the date the warden

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress initially delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13, Application Notes.

But notably, the Second Circuit has held that U.S.S.G. § 1B1.13 does not apply to compassionate-release motions brought directly by defendants, such as this one, and no longer constrains a district court's consideration of what qualifies as extraordinary and compelling reasons for purposes of such motions.  See United States v. Brooker, 976

---

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a).  Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 567 F. Supp. 3d 416, 424 (S.D.N.Y. 2020).

F.3d 228, 234-37 (2d Cir. 2020) (holding that U.S.S.G. § 1B1.13 applies only to motions brought by the Bureau of Prisons).  The circuit court further held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id.; see also United States v. Jones, 17 CR 214 (CM), 2021 WL 4120622, at *1-2 (S.D.N.Y. Sept. 9, 2021).

As to the required consideration of the 18 U.S.C. § 3553 (a) factors, they include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).  Included in this calculus is whether the defendant may pose a danger to the safety of any person or to the community if released (the need to protect the public from future crimes).

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

B.    **Brown's Motion for Compassionate Release**

   1. **Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains an exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf,

5

or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Here, the record reflects that Brown has exhausted his administrative rights, and the government does not contend otherwise. See Motion for Compassionate Release, p. 16; Government Response, Docket No. 1323, p. 5 (conceding exhaustion). This Court therefore finds that exhaustion is complete.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Brown contends that his age at the time he committed his offense, his troubled upbringing, his pandemic-related harsh conditions of confinement, and his rehabilitation, considered singly or in combination, constitute extraordinary and compelling reasons warranting a sentence reduction or immediate release. None of these arguments are compelling.

First, Brown maintains that relief is warranted because he was only 18 years old when he committed his offense. While true that some courts consider youth and the impulsiveness of the adolescent brain as mitigating factors warranting a sentence reduction, see, e.g., United States v. Ramsey, 538 F. Supp. 3d 407, 415-424 (S.D.N.Y. 2021), here Brown's youth was previously considered in the negotiation of his plea agreement, which allowed him to avoid a possible life sentence, and was further considered by this Court at sentencing, see Sentencing Transcript, Docket No. 773, pp. 6-7. Moreover, in contrast to having an underdeveloped, impulsive adolescent brain, the record reflects that Brown had a keen intellect and was high-functioning, which this Court discussed at length at sentencing. See Sentencing Transcript, pp. 8-9, 10. 18, 21. Youth

is therefore not a circumstance warranting relief in this case.

Brown next contends that his troubled upbringing warrants relief. Brown was raised in a single-parent household after his father was murdered when Brown was just four years old. See Presentence Investigation Report, Docket No. 733, ¶ 132. Although the presentence investigation report notes that Brown reported an "average childhood" free from significant issues and abuse, see id., Brown maintains that he was drawn into gangs and other negative influences in his low-income neighborhood by his paternal siblings, one of whom was a co-defendant. These difficult circumstances, however, are unfortunately not exceptional or unique in the criminal offender population. And again, Brown's personal circumstances were considered in the negotiation of his greatly-reduced Rule 11 (c)(1)(C) sentencing agreement and by this Court during the imposition of sentence. Id. pp. 7, 11. Even considered anew here, nothing about Brown's upbringing constitutes an extraordinary and compelling reason warranting relief. See United States v. Coleman, 13 Cr. 596 (GBD), 2022 WL 717892, at *2 (S.D.N.Y. March 20, 2022) (finding that the defendant's "difficult and troublesome youth" was not an extraordinary and compelling circumstance where it was previously considered at the time of sentencing).

Next, Brown maintains that the harsh conditions of confinement caused by the global COVID-19 pandemic, specifically the lockdowns and restrictions employed to combat the spread of the disease, constitute an exceptional reason warranting relief. Brown does not allege unique or personally onerous conditions. He instead relies on the general circumstances experienced by all inmates, which do not, in this Court's view, constitute extraordinary and compelling circumstances warranting relief. See United States v. Farmer, No. 19-CR-427 (LTS), 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022)

("While the Court is sympathetic to the poor conditions many prisoners have faced during the pandemic, generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release."); United States v. Bryant, No. 06-CR-17-LTS, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (finding that generalized conditions of confinement during the pandemic "are not unique to [defendant] and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction"); cf. United States v. Ramirez, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021) ("If the challenging conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction."); but see United States v. Lora, 16 Cr. 44-5 (KPF), 2022 WL 1055749, at *5 (S.D.N.Y. Apr. 8, 2022) (finding that "pandemic-induced conditions of confinement *may* constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic" (emphasis in original)).

Finally, Brown argues that compassionate release is warranted due to his extraordinary rehabilitation, demonstrated by his participation in several unspecified rehabilitative classes and by earning his GED. Brown, however, earned his GED before he was sentenced, and the completion of several unspecified prison programs does not itself constitute extraordinary rehabilitation. See Sentencing Transcript, p. 21. Moreover, Brown admits that he committed multiple disciplinary infractions, including fighting and possessing a hazardous tool. See Government's Memorandum of Law, Docket No. 1323, Exhibit B. In any event, rehabilitation efforts alone cannot be considered an extraordinary

and compelling reason for a sentence reduction.  See 28 U.S.C. § 994 (t); Brooker, 976 F.3d at 234 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'") (emphasis in original) (quoting 28 U.S.C. § 994 (t)).  While Brown's efforts at rehabilitating himself should certainly continue, they do not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release.  See United States v. Steele, No. 3:19-cr-65-VLB-2, 2021 WL 2138829, at *7 (D. Conn. May 26, 2021) (finding that "because the other claimed circumstances are unpersuasive and unsupported, [defendant's] rehabilitation cannot be considered an extraordinary and compelling reason"); United States v. Richiez-Castillo, 00-CR-54-RJA, 2021 WL 1746426, at *6 (W.D.N.Y. May 4, 2021) (finding that rehabilitation could not be considered an extraordinary and compelling reason for sentence reduction in the absence of other grounds).

Accordingly, for these reasons, this Court finds that Brown has failed to demonstrate circumstances, viewed singly or in combination, that constitute an extraordinary and compelling reason for compassionate release.

### 3. Consideration of the § 3553 (a) Factors

Even if Brown had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are greatly outweighed by consideration of the § 3553 (a) factors, and that Brown's original sentence would be severely undermined by a sentence reduction.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 426.

The nature and circumstances of Brown's criminal conduct are truly deplorable. He was an admitted member of the Bailey Boys, a violent street gang that distributed controlled substances and committed other crimes on the East Side of Buffalo. See Plea Agreement, ¶¶ 5 (a) and (d); Presentence Investigation Report, ¶ 8. The Bailey Boys protected and controlled their territory through fear and violence, including murder. See Plea Agreement, ¶ 5 (b); Presentence Investigation Report, ¶ 9.

Brown himself was the gunman in several shootings involving multiple victims, including children. On June 28, 2011, Brown and other gang members drove past a home and opened fire on a porch full of people, including a rival gang member, who was shot in the shoulder and seriously injured, requiring hospitalization for nearly three months. See Plea Agreement, ¶ 5 (f); Presentence Investigation Report, ¶ 25.

Approximately one month later, on July 23, 2011, Brown attempted to kill an individual who was trying to distance himself from the Bailey Boys. See Plea Agreement, ¶ 5 (g); Presentence Investigation Report, ¶ 28. Brown brazenly entered a neighborhood block party and fired multiple rounds at the individual while walking past a bounce house being used by small children. Id. Though the target was not hit, the bounce house with the children inside was hit and deflated. Id.

Less than one week later, on July 29, 2011, Brown attempted to murder another rival gang member. See Plea Agreement, ¶ 5 (h); Presentence Investigation Report, ¶ 27. When Brown received word that the rival was a passenger in a nearby car, he left his gathering, found the car, and fired five shots at close range, striking the rival gang member in the chest and back, causing injuries that required hospitalization for three weeks. Id.

The following year, on May 12, 2012, Brown and another individual walked to

within 15 feet of several rival gang members in a popular, public park and opened fire. See Plea Agreement, ¶ 5 (i); Presentence Investigation Report, ¶ 35.  Five people were shot: two were hit in the ankle; one was shot in the left eye, causing permanent blindness; one was left a paraplegic; and the fifth, Marquay Lee, was killed.  Id.  Brown carried out this shooting to increase his stature in the Bailey Boys.  Id.

As discussed previously, Brown's personal history and characteristics include the death of his father at a young age and an "average childhood" free of significant familial issues or abuse.  See Presentence Investigation Report, ¶ 132.  He is a 30-year-old man who was raised by his mother, together with his siblings.  Id.  At the time of sentencing, Brown reported a good relationship with his family.  Id.  Brown is single, with no children. See id. ¶ 133.  At sentencing, he had no significant mental-health diagnoses, physical problems, or substance-abuse issues, and he does not claim to have developed any since.  See id. ¶¶ 136-38.

In considering the purposes of sentencing, this Court reiterates its previous finding that a 22-year sentence is fair, just, and reasonable, and further finds that the sentence would be severely undermined by any reduction, particularly because it was a bargained-for Rule 11 (c)(1)(C) sentence.  A reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant.  See 18 U.S.C. § 3553 (a).  A reduction would also result in unwarranted sentencing disparities.  Id.

Finally, as to dangerousness, which is considered in conjunction with the need to protect the public from future crimes by the defendant, this Court finds that Brown continues to pose a danger to the community.  As detailed above, Brown displayed a

wanton disregard for life and property as he participated in acts of murder and other violence aimed at occupying and controlling a portion of the city for criminal profit. And on a much smaller scale, Brown has recent disciplinary infractions for fighting (2018), destroying property and disobeying directives (2019), and possessing a hazardous tool (2020). See Government's Memorandum of Law, Exhibit B. This Court therefore concludes that Brown continues to pose a danger to the community.

Accordingly, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction (compassionate release) under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Brown's motion will therefore be denied.

### V. ORDERS

IT HEREBY IS ORDERED, that Brown's Motion for Compassionate Release (Docket No. 1316) is DENIED.

FURTHER, that the Clerk of Court is DIRECTED to send a copy of this decision to Brown at his correctional institution of record.

SO ORDERED.

Dated:    July 31, 2023
          Buffalo, New York

                                                    s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge